UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:25-CR-00083-KKC

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                            PLEA AGREEMENT

MARTAVEUS LEE BELL JR.                                       DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Counts 3, 4, 7, 8, 9, and 10 of the Indictment. Counts 3 and 4 charge violations of 21 U.S.C. § 841(a)(1), distribution of 50 grams or more of methamphetamine (actual). Count 7 charges a violation of 18 U.S.C. § 933(a)(1), trafficking in firearms. Count 8 charges a violation of 21 U.S.C. § 841(a)(1), possession with the intent to distribute 50 grams or more of methamphetamine (actual). Count 9 charges a violation 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of a drug trafficking crime. Count 10 charges a violation of 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 1, 2, 5, and 6 of the Indictment.

2. The essential elements of Counts 3 and 4 are as follows:
   (a) That the defendant knowingly and intentionally distributed methamphetamine (actual), a Schedule II controlled substance;

   (b) That the substance was, in fact, methamphetamine (actual); and

   (c) That the amount of methamphetamine (actual) was at least 50 grams.

3. The essential elements of Count 7 are as follows:

   (a) That the defendant knowingly shipped, transported, transferred, caused to be transported or disposed of a firearm to another person;

   (b) That the shipping, transporting, transferring, causing to be transported or disposition of the firearm was in or otherwise affecting interstate commerce; and

   (c) That the defendant knew or had reasonable cause to believe that the use, carrying, or possession of the firearm by the recipient would constitute a felony.

4. The essential elements of Count 8 are as follows:

   (a) That the defendant knowingly and intentionally possessed methamphetamine (actual), a Schedule II controlled substance;

   (b) That the defendant possessed the methamphetamine (actual) with the intent to distribute it; and

   (c) That the amount of methamphetamine (actual) was at least 50 grams.

5. The essential elements of Count 9 are as follows:

   (a) That the defendant committed a drug trafficking crime as charged in Count 8 of the Indictment;

   (b) That the defendant knowingly possessed a firearm; and

   (c) That the possession of the firearm was in furtherance of the crime charged in Count 8.

6. The essential elements of Count 10 are as follows:

   (a) That the defendant had been convicted of a crime punishable by imprisonment for more than one year;

 (b) That the defendant, following his conviction, knowingly possessed a firearm;

 (c) That at the time the defendant possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and

 (d) That the firearm crossed a state line prior the defendant's possession.

7. As to Counts 3, 4, 7, 8, 9, and 10 of the Indictment, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

 (a) Beginning in February of 2025 and continuing through March of 2025, law enforcement utilized a confidential informant (CI) to conduct multiple controlled drug and firearm transactions with the Defendant in Fayette County in the Eastern District of Kentucky. The drug transactions are described as follows:

| DATE | LOCATION | DRUG QUANTITY PURCHASED |
|---|---|---|
| February 18, 2025 | Fayette County | 83.8 grams of methamphetamine at 100% purity for a total of 83.8 grams of methamphetamine (actual) |
| February 27, 2025 | Fayette County | 138.94 grams of methamphetamine at 91% purity for a total of 126.43 grams of methamphetamine (actual) |
| March 5, 2025 | Fayette County | 214.87 grams of methamphetamine at 94% purity for a total of 201.97 grams of methamphetamine (actual) |
| March 11, 2025 | Fayette County | 86.23 grams of methamphetamine at 85% purity for a total of 73.29 grams of methamphetamine (actual) |

 (b) Prior to the controlled transaction on March 11, 2025, the CI contacted the Defendant via text message and inquired about purchasing a firearm. The CI explained that they had other people asking about firearms and that the CI could "flip them." The CI further explained that they, too, would like to have a firearm because "business [had] picked up", referring to the CI's drug trafficking. The CI also informed the Defendant that the CI could not purchase a firearm from a pawn shop because the CI was a felon. While meeting with the Defendant during the

    March 11 controlled drug transaction, the CI, again, inquired whether the Defendant had a firearm available; however, the Defendant responded that he did not have one for sale at that moment. Shortly after the conclusion of the drug transaction, the Defendant called the CI and informed them that the Defendant had a firearm available for sale. The two met again in Fayette County the same day, and the Defendant sold a Taurus, Model: PT 24/7 G2C, Cal.: .45 ACP, pistol, SN: NEY85346, to the CI. On March 12, 2025, the Defendant met with the CI, again, and sold to the CI a Taurus, Model: G2C, Cal.: 9mm, pistol, SN: ROA22PG-1707.

(c) On June 5, 2023, ATF executed a federal search warrant on the Defendant's residence in Fayette County. During the search, agents located the following items:
- 1331.6 grams of methamphetamine at 96% purity for a total of 1278.3 grams of methamphetamine (actual);
- 329 grams of methamphetamine at 96% purity for a total of 315.8 grams of methamphetamine (actual);
- 83.483 grams of fentanyl
- Glock, Model: 43X, Cal.: 9x19mm, pistol, SN: AKFU426, found to be stolen and loaded with nine (9) rounds of ammunition and one (1) round chambered;
- Walther, Model: PDP Compact, Cal.: 9x19mm, pistol, SN: FEA5516, found to be stolen and loaded with nineteen (19) rounds of ammunition;
- Assorted ammunition; and
- $20,439 in United States currency

(d) Following his arrest, the Defendant admitted to agents that there were narcotics in the home and that he obtained his narcotics by simply making a call to an unknown person. The Defendant further admitted that he possessed the firearms located during the search because he is "on guard" and has to "watch [his] back."

(e) The narcotics purchased during the above-described controlled transactions and the execution of the federal search warrant were submitted to the DEA Laboratory for testing where the identity, weights, and purity of the substances were confirmed as described above. Additionally, the firearms sold by the Defendant on March 11 and March 12 along with the firearms seized on June 5 were determined by an ATF Interstate Nexus Expert to have been manufactured outside the state of Kentucky and, therefore, had each crossed state lines and traveled in interstate commerce prior to the Defendant's possession of them.

    (f) The Defendant admits that he possessed the methamphetamine (actual) seized by agents on June 5, 2025, with the intent to distribute. The Defendant also admits that he knowingly possessed the firearms seized on June 5 and that his possession was unlawful as he knew at that time that he had previously been convicted of a crime punishable by imprisonment for more than one year. Based on the June 5 firearms' proximity to the Defendant's narcotics and currency, both firearms being stolen, loaded, and at least one firearm being chambered, the Defendant's ease of access to the weapons, and the Defendant's unlawful possession of the firearms as a convicted felon, the Defendant further admits that he possessed the firearms seized on June 5 in furtherance of his drug trafficking activity on that date. Lastly, the Defendant admits that he knowingly transferred firearms to the CI on March 11 and March 12 knowing or having reason to believe that the CI's use, carrying, and/or possession of the firearms would constitute a felony.

    8. The statutory punishment for Counts 3, 4, and 8 is not less than 10 years imprisonment, not more than life imprisonment, not more than a $10,000,000 fine, and not less than 5 years of supervised release. However, it is the United States's position that the Defendant is subject to an enhanced statutory punishment of not less than 15 years imprisonment, not more than life imprisonment, not more than a $20,000,000 fine, and not less than 10 years of supervised release for Counts 3, 4, and 8, because, prior to the commission of the offenses in Counts 3, 4, and 8, the Defendant had a prior final conviction for a serious violent felony, that is, Manslaughter First Degree, a conviction under Kentucky Revised Statute 507.030, by final judgment of the Fayette Circuit Court, Case No. 15-CR-00330 for which he served more than 12 months of imprisonment.

    The Defendant admits that he was convicted of the above-stated Manslaughter First Degree offense and that he served more than 12 months of imprisonment for that offense. However, the Defendant disagrees that his conviction for Manslaughter First

Degree constitutes a "serious violent felony" and, therefore, reserves the right to object to enhanced statutory punishments for Counts 3, 4, and 8.

The statutory punishment for Counts 7 and 10 is not more than 15 years imprisonment, not more than a $250,000 fine, and not more than 3 years of supervised release. The statutory punishment for Count 9 is not less than 5 years imprisonment, not more than life imprisonment, consecutive to any other sentence, not more than a $250,000 fine, and not more than 5 years of supervised release. In addition, a mandatory special assessment of $600 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of sentencing.

9. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

   (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, Manual, will determine the Defendant's guidelines range.

   (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the facts set forth in paragraph 6 as well as the provided discovery materials.

   (c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(2), the base offense level for Counts 3, 4, and 8 is at least 36 as the offenses and relevant conduct involved at least 30,000 kilograms of converted drug weight.

   (d) Pursuant to U.S.S.G. § 2K2.1(a)(4), the base offense level for Counts 7 and 10 is at least 20 as the offenses involved a semiautomatic firearm capable of accepting a large capacity magazine and the Defendant was a prohibited person at the time of the offenses. However, the parties disagree as to whether the Defendant is subject to a higher base offense level of 22 under § 2K2.1(a)(3) involving a semiautomatic firearm capable of accepting a large capacity magazine and the Defendant committing the offense subsequent to sustaining a

    felony conviction for a crime of violence. Therefore, the parties reserve the right to object to or argue in favor of the higher base offense level under § 2K2.1(a)(3).

(e) Pursuant to U.S.S.G. § 2K2.1(b)(1), the offense level for Counts 7 and 10 is increased by at least 2 levels as the offenses and relevant conduct involved at least 3 firearms.

(f) Pursuant to U.S.S.G. § 2K2.1(b)(4), the offense level for Counts 7 and 10 is increased by 2 levels as at least one firearm was stolen.

(g) Pursuant to U.S.S.G. § 2K2.1(b)(5)(C), the offense level for Counts 7 and 10 is increased by 5 levels as the Defendant transported, transferred, sold, or otherwise disposed of two or more firearms or attempted or conspired to transport, transfer, sell, or otherwise dispose of two or more firearms, knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who intended to use or dispose of the firearms unlawfully.

(h) Pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence for Count 9 is the minimum term of imprisonment required by statute, which is 5 years consecutive to any other sentence.

(i) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

10. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

11. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

12. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable

defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

13. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

14. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before

transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

15. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees

that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

16. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

17. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

18. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

19. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
ACTING U. S. ATTORNEY

Date: 1-28-26

By: _____
Francisco J. Villalobos II
Assistant United States Attorney

Date: 1/22/26

_____
Martaveus Lee Bell Jr.
Defendant

Date: 1/22/26

_____
Jeffrey C. Rager
Attorney for Defendant